LEE LITIGATION GROUP, PLLC
C.K. Lee (CL 4086)
Anne Seelig (AS 3976)
30 East 39th Street, Second Floor
New York, NY 10016
Tel.: 212-465-1188
Fax: 212-465-1181
*Attorneys for Plaintiff*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

ALFREDO BRAVO,
*on behalf of himself, FLSA Collective Plaintiffs and the Class,*

        Plaintiff,

           v.

FOURTH ON FIFTH LLC
        d/b/a RUSS & DAUGHTERS,
JOHN DOE CORPS. 1-2
        d/b/a RUSS & DAUGHTERS,
NIKI RUSS FEDERMAN and
JOSHUA RUSS TUPPER,

        Defendants.

---

Case No.:

**CLASS AND COLLECTIVE ACTION COMPLAINT**

Jury Trial Demanded

Plaintiff, ALFREDO BRAVO ("Plaintiff"), on behalf of himself and others similarly situated, by and through his undersigned attorneys, hereby files this Class and Collective Action Complaint against Defendants, FOURTH ON FIFTH LLC d/b/a RUSS & DAUGHTERS and JOHN DOE CORPS. 1-2 (the "Corporate Defendants"), NIKI RUSS FEDERMAN and JOSHUA RUSS TUPPER (the "Individual Defendants," and collectively with the Corporate Defendants, the "Defendants") and states as follows:

## INTRODUCTION

1.      Plaintiff alleges, pursuant to the Fair Labor Standards Act, as amended, 29 U.S.C. §§201 *et. seq.* ("FLSA"), that he and others similarly situated are entitled to recover from Defendants: (1) unpaid wages due to time-shaving, (2) liquidated damages and (3) attorneys' fees and costs.

2.      Plaintiff further alleges that, pursuant to the New York Labor Law ("NYLL"), he and others similarly situated are entitled to recover from Defendants: (1) unpaid wages due to time-shaving, (2) statutory penalties, (3) liquidated damages pursuant to the New York Labor Law, and (4) attorneys' fees and costs.

3.      Plaintiff alleges that he was deprived his statutory rights as a result of Defendants' unlawful discrimination practices under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.*, as amended ("Title VII")  and brings this action againt Defendants to recover (1) back pay, (2) compensatory damages, (3) punitive damages and (4) attorneys' fees and costs.

4.      Plaintiff further alleges that he was deprived his statutory rights as a result of Defendants' unlawful discrimination practices under New York State Human Rights Law, New York Executive Law § 296 ("NYSHRL"), and New York City Human Rights Law, Administrative Code of the City of New York § 8-502 ("NYCHRL") and brings this action againt Defendants to recover (1) back pay, (2) compensatory damages, (3) punitive damages and (4) attorneys' fees and costs.

## JURISDICTION AND VENUE

5.      This Court has jurisdiction over this controversy pursuant to 29 U.S.C. §216(b), 28 U.S.C. §§1331, 1337 and 1343. This Court also has jurisdiction over this

controversy because Plaintiff's Title VII claims arise under the laws of the United States and are brought to recover damages for deprivation of equal rights.

6.      This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. §1367 because they arise from a common nucleus of operative facts with the fedeal claims and are so related to the federal claims as to form part of the same case or controversy under Article III of the United States Consitution.

7.      Venue is proper in the Southern District pursuant to 28 U.S.C. §1391 and 42 U.S.C. § 2000e-5(f)(3) because Defendants conduct business and can be found in this district and a substantial part of the events and omissions giving rise to the claims alleged herein occurred in this district, and because the alleged unlawful employment practice was committed in this district and employment records relevant to such practice are maintained and administered in this district.

## EXHAUSTION OF ADMINISTRATIVE REQUIREMENTS

8.      Plaintiff has exhausted his administrative remedies and complied with all statutory prerequisites to his Title VII claims.

9.      On December 19, 2016, Plaintiff filed a charge of employment discrimination with the Equal Employment Opportunity Commission (the "EEOC" or the "Commission"), within the required 180 days of the discriminatory event. On July 12, 2017, the EEOC issued Plaintiff the Notice of Right to Sue, attached hereto as **EXHIBIT A**.

10.     This action was filed within the required ninety (90) days of the receipt of Plaintiff's Notice of Right to Sue.

## PARTIES

11.     Plaintiff, ALFREDO BRAVO, is a resident of Bronx County, New York.

12.     Corporate Defendant FOURTH ON FIFTH LLC d/b/a RUSS & DAUGHTERS is a domestic limited liability company organized under the laws of the State of New York, with an address for principal place of business located at 1109 Fifth Avenue, New York, New York 10128 and an address for service of process located at c/o Russ & Daughters 179 E Houston Street, New York, New York 10002.

13.     Corporate Defendants JOHN DOE CORPS. 1-2 d/b/a RUSS & DAUGHTERS are various business corporations doing business as Russ & Daughters throughout New York City, which employ FLSA Collective Plaintiffs and Class Members under a common wage and hour policy.

14.     Individual Defendants, NIKI RUSS FEDERMAN and JOSHUA RUSS TUPPER, are the owners of FOURTH ON FIFTH LLC d/b/a RUSS & DAUGHTERS and JOHN DOE CORPS. 1-2 d/b/a RUSS & DAUGHTERS. Individual Defendants are cousins and the fourth generation to own the Russ & Daughters business. Individual Defendants exercised control over the terms and conditions of the Plaintiff. Individual Defendants exercise the power to) fire and hire employees, supervise and control employee work schedules and conditions of employment, and determine the rate and method of compensation of employees including those of Plaintiff. At all times, employees could complain to Individual Defendants directly regarding any of the terms of their employment, and Individual Defendants would have the authority to effect any changes to the quality and terms of employee's employment, including changing their schedule, compensation, or terminating or hiring such employees. Individual Defendants are always present at the place of business and directly reprimand any employee who does not perform his duties correctly. They also have the power and authority to supervise and control supervisors of Plaintiff.

15.    The Defendants operate a specialty food business under the trade name "Russ & Daughters" at the following locations:

(a) 1109 Fifth Avenue, New York, New York 10128;

(b) 179 E Houston Street, New York, New York 10002; and

(c) 127 Orchard Street, New York, New York 10002

(together, the "Restaurants"). The Restaurants operate as a single integrated enterprise. Specifically, the Restaurants are engaged in related activities, share common ownership and have a common business purpose. The Restaurants are commonly owned and operated by the Individual Defendants. *See* **EXHIBIT B** (a printout of a screencapture of Russ and Daughters' website). The Restaurants share identical trade names, menu items, and are advertised and marketed jointly at shop.russanddaughters.com. *Id.*; *see also* **EXHIBIT C** (a printout of a screencapture of Russ and Daughters' locations). The Russ and Daughters' shop, café, and the restaurant at the Jewish Museum, serve the same type of specialty foods at each of their locations. Exhibit A. Defendants also provide the same employment packages and benefits to all of their employees, regardless of the location at which they work. Employees are also interchangeable among the Restaurants on an as-needed basis.

16.    At all relevant times, Defendants were and continue to be an "enterprise engaged in commerce" within the meaning of the FLSA, New York Labor Law, and the Regulations thereunder.

17.    At all relevant times, Defendants were and continue to be an employer within the meaning of Title VII, the New York State Human Rights Law,  the New York City Human Rights Law, and the Regulations thereunder.

18.    At all relevant times, the work performed by Plaintiff, FLSA Collective Plaintiffs and Class members was directly essential to the business operated by Defendants.

## FLSA COLLECTIVE ACTION ALLEGATIONS

19.    Plaintiff brings claims for relief as a collective action pursuant to FLSA Section 16(b), 29 U.S.C. § 216(b), on behalf of all non-exempt kitchen employees (including dishwashers, food preparers, and line cooks) employed by Defendants on or after the date that is six years before the filing of the initial Complaint in this case as defined herein ("FLSA Collective Plaintiffs").

20.    At all relevant times, Plaintiff and the other FLSA Collective Plaintiffs are and have been similarly situated, have had substantially similar job requirements and pay provisions, and are and have been subjected to Defendants' decisions, policies, plans, programs, practices, procedures, protocols, routines, and rules, all culminating in a willful failure and refusal to pay them proper wages and overtime premium due to time shaving. The claims of Plaintiff stated herein are essentially the same as those of the other FLSA Collective Plaintiffs.

21.    The claims for relief are properly brought under and maintained as an opt-in collective action pursuant to §16(b) of the FLSA, 29 U.S.C. § 216(b). The FLSA Collective Plaintiffs are readily ascertainable. For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided to the FLSA Collective Plaintiffs via first class mail to the last address known to Defendants.

## RULE 23 CLASS ALLEGATIONS – NEW YORK

22.     Plaintiff brings claims for relief pursuant to the Federal Rules of Civil Procedure ("F.R.C.P.") Rule 23, on behalf of all non-exempt kitchen employees (including dishwashers, food preparers, and line cooks) employed by Defendants on or after the date that is six years before the filing of the Complaint in this case as defined herein (the "Class Period").

23.     All said persons, including Plaintiff, are referred to herein as the "Class." The Class members are readily ascertainable. The number and identity of the Class members are determinable from the records of Defendants. The hours assigned and worked, the position held, and rates of pay for each Class member are also determinable from Defendants' records. For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided by means permissible under F.R.C.P. 23.

24.     The proposed Class is so numerous that a joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court. Although the precise number of such persons is unknown, the facts on which the calculation of that number are presently within the sole control of Defendants, there is no doubt that there are more than forty (40) members of the Class.

25.     Plaintiff's claims are typical of those claims, which could be alleged by any member of the Class, and the relief sought is typical of the relief, which would be sought by each member of the Class in separate actions. All the Class members were subject to the same corporate practices of Defendants of (i) failing to pay proper wages and overtime premium due to time shaving, (ii) failing to provide proper wage statements that were in compliance

with the requirements under the New York Labor Law, and (iii) failing to provide proper wage and hour notice to Class members, at date of hiring and annually, per requirements of the New York Labor Law. Defendants' corporate-wide policies and practices affected all Class members similarly, and Defendants benefited from the same type of unfair and/or wrongful acts as to each Class member. Plaintiff and other Class members sustained similar losses, injuries and damages arising from the same unlawful policies, practices and procedures.

26.    Plaintiff is able to fairly and adequately protect the interests of the Class and has no interests antagonistic to the Class. Plaintiff is represented by attorneys who are experienced and competent in both class action litigation and employment litigation and have previously represented plaintiffs in wage and hour cases.

27.    A class action is superior to other available methods for the fair and efficient adjudication of the controversy – particularly in the context of the wage and hour litigation where individual class members lack the financial resources to vigorously prosecute a lawsuit against corporate defendants. Class action treatment will permit a large number of similarly situated persons to prosecute common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender. Because losses, injuries and damages suffered by each of the individual Class members are small in the sense pertinent to a class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual Class members to redress the wrongs done to them. On the other hand, important public interests will be served by addressing the matter as a class action. The adjudication of individual litigation claims would result in a great expenditure of Court and public resources;

however, treating the claims as a class action would result in a significant saving of these costs. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent and/or varying adjudications with respect to the individual members of the Class, establishing incompatible standards of conduct for Defendant and resulting in the impairment of class members' rights and the disposition of their interests through actions to which they were not parties. The issues in this action can be decided by means of common, class-wide proof. In addition, if appropriate, the Court can, and is empowered to, fashion methods to efficiently manage this action as a class action.

28.     Defendants and other employers throughout the state violate the New York Labor Law. Current employees are often afraid to assert their rights out of fear of direct or indirect retaliation. Former employees are fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment. Class actions provide class members who are not named in the Complaint a degree of anonymity, which allows for the vindication of their rights while eliminating or reducing these risks.

29.     There are questions of law and fact common to the Class which predominate over any questions affecting only individual class members, including:

> a.  Whether Defendants employed Plaintiff and the Class within the meaning of the New York law;
>
> b.  What are and were the policies, practices, programs, procedures, protocols and plans of Defendants regarding the types of work and labor for which Defendants did not pay the Class members properly;
>
> c.  At what common rate, or rates subject to common methods of calculation, was and are Defendants required to pay the Class members for their work;

d.  Whether Defendants properly notified Plaintiff and the Class members of their hourly rate and overtime rate;

e.  Whether Defendants provided proper wage statements to Plaintiff and the Class members per requirements of the New York Labor Law;

f.  Whether Defendants provided proper wage and hour notice, at date of hiring and annually, to all employees per requirements of the New York Labor Law; and

g.  Whether Defendants properly compensated Plaintiff and Class members for all hours worked under state and federal law.

## STATEMENT OF FACTS

30.    On or about January 18, 2016, Plaintiff ALFREDO BRAVO, was hired by Defendants to work as a dishwasher and food preparer for Defendants' "Russ & Daughters" restaurant cafe, located at 1109 Fifth Avenue, New York, New York 10128. Plaintiff's employment was wrongfully terminated by Defendants on or about July 12, 2016.

31.    At all times, Plaintiff regularly worked over forty (40) hours per workweek. Throughout his employment by Defendants, Plaintiff's regular working hours were from 6:00 a.m. until 2:00 p.m., six (6) days per week. Plaintiff worked a total of approximately forty eight (48) hours per week throughout his employment by Defendants. FLSA Collective Plaintiffs and Class members worked similar hours as Plaintiff.

32. Throughout his employment, Plaintiff was compensated at a regular rate of $12.00 per hour for hours worked up until forty (40) hours per workweek and at a overtime rate of $18.00 per hour for hours worked between forty and forty eight hours per workweek.

33.  Throughout his entire employment, Plaintiff was not properly compensated his proper wages for all hours worked, due to Defendants' policy of time-shaving. Plaintiff, FLSA Collective Plaintiffs and the Class were regularly required to work after clocking-out. Specifically, the manager, "Rachael" (Last Name Unknown), would wait until Plaintiff and other kitchen employees clocked out, and then Rachael would ask Plaintiff and other kitchen employees to take out the garbage to the curb. If the garbage truck did not show up, Plaintiff and other kitchen employees were required to bring the garbage back inside. This would take at least thirty minutes per day, and it happened three to four times per week. Defendants' policy resulted in Defendants' time-shaving of two hours per week for each Class member. This sum was never correctly reflected in employees' work hours as Plaintiff, FLSA Collective Plaintiffs and Class members were required to clock-out before performing this work.

34.  Defendants failed to maintain proper employment records, as required by the FLSA and NYLL. At all relevant times, Defendants provided fraudulent wage statements to Plaintiff, which failed to accurately show the number of hours worked by Plaintiff in a given workweek. Class Members received similar fraudulent wage statements due to Defendants' policy of time shaving.

35.  Defendants never provided Plaintiff and Class Members with proper wage notices, as required by the NYLL.

36.  At no time during the relevant time periods did Defendants provide Plaintiff or Class members with proper wage statements, as required by the NYLL. Plaintiff and Class members received fraudulent wage statements that did not accurately reflect the hours that they worked, as Defendants failed to accurately maintain such records. Defendants also

provided wage statements that failed to clearly provide, among others, Defendants' phone number, as required by the NYLL.

37.     Defendants unlawfully failed to pay Plaintiff, the FLSA Collective Plaintiffs, and members of the Class either the FLSA overtime rate (of one and one half the regular rate) or the New York State overtime rate (of one and one half times the regular rate) for hours they worked in excess of forty (40) each workweek due to Defendants' policy of time-shaving.

38.     Defendants knowingly and willfully operated their business with a policy of not paying either the FLSA minimum wage or the New York State minimum wage to Plaintiff, FLSA Collective Plaintiffs and Class members due to Defendants' policy of time-shaving.

39.     Defendants knowingly and willfully operated their business with a policy of not providing proper wage statements as required under the New York Labor Law.

40.     Defendants failed to provide proper wage notices to employees, at the beginning of employment and annually thereafter, pursuant to the requirements of the New York Labor Law.

41.     During Plaintiff's employment by Defendants, Defendants permitted managerial employees to foster a hostile work environment. Plaintiff, known to be openly homosexual, frequently suffered severe discrimination, related verbal abuse at the hands of his supervisor, and sexual harrassment on the basis of his sexual orientation while employed by Defendants.

42.     During Plaintiff's employment by Defendants, the chef in charge of the kitchen, Mr. Joel Diaz, made homophobic comments and threatened Plaintiff. For instance, Mr. Diaz regularly called Plaintiff names, including "zapato biejo," which is translated to "old

shoes" in English, and "faggot." Mr. Diaz further sexually harassed and threatened Plaintiff by propositioning him for sex on multiple occasions. On one occasion Mr. Diaz told Plaintiff that he would have sex with Plaintiff if Plaintiff paid him $1000. Plaintiff had declined and Mr. Diaz told Plaintiff the following week that the price increased to $1500.

43.    Throughout Plaintiff's employment with Defendants, he contacted Defendants and management regarding Mr. Diaz's homophobic comments and sexual harassment. Instead of addressing the sexual harassment and volatile hostile work environment, Defendants told Plaintiff to ignore Mr. Diaz's disparaging comments.

44.    In or around July 2016, Mr. Diaz threatened Plaintiff with death threats and Plaintiff called the police to report the threats. Thereafter, Defendants terminated Plaintiff's employment in retaliation for reporting the incident to the police and claimed that Plaintiff was spreading rumors and creating an "uncohesive" workplace as a result of complaints Plaintiff made against Mr. Diaz for sexual harassment.

45.    Defendants fostered a hostile work environment against Plaintiff by failing to address the workplace sexual harassment against Plaintiff. Moreover, Defendants ultimately punished Plaintiff by terminating his employment in retaliation for contacting the police regarding Mr. Diaz's threats.

46.    Plaintiff retained Lee Litigation Group, PLLC to represent Plaintiff, FLSA Collective Plaintiffs and Class members, in this litigation and have agreed to pay the firm a reasonable fee for its services.

## STATEMENT OF CLAIM

## COUNT I

## VIOLATION OF THE FAIR LABOR STANDARDS ACT
## ON BEHALF OF PLAINTIFF AND FLSA COLLECTIVE PLAINTIFFS

47.    Plaintiff realleges and reavers Paragraphs 1 through 46 of this Class and Collective Action Complaint as if fully set forth herein.

48.    At all relevant times, Defendants were and continue to be employers engaged in interstate commerce and/or the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207 (a).  Further, Plaintiff and FLSA Collective Plaintiffs are covered individuals within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207 (a).

49.    At all relevant times, Defendants employed Plaintiff and FLSA Collective Plaintiffs within the meaning of the FLSA.

50.     At all relevant times, Defendant had gross annual revenues in excess of $500,000.00.

51.    At all relevant times, Defendants engaged in a policy and practice of refusing to pay wages, including overtime compensation at the statutory rate of time and one-half, to Plaintiff and FLSA Collective Plaintiffs for all hours worked due to Defendants' policy of time shaving.

52.    Defendants failed to pay Plaintiff and FLSA Collective Plaintiffs their wages in the lawful amount for all of their hours worked due to Defendants' policy of time shaving.

53.    Records, if any, concerning the number of hours worked by Plaintiff and FLSA Collective Plaintiffss and the actual compensation paid to Plaintiff and FLSA Collective Plaintiffs should be in the possession and custody of the Defendants. Plaintiff intends to obtain these records by appropriate discovery proceedings to be taken promptly in this case

14

and, if necessary, will then seek leave of Court to amend this Complaint to set forth the precise amount due.

54.    Defendants knew of and/or showed a willful disregard for the provisions of the FLSA as evidenced by their failure to compensate Plaintiff and FLSA Collective Plaintiffs for all hours worked when Defendants knew or should have known such was due.

55.    Defendants failed to properly disclose or apprise Plaintiff and FLSA Collective Plaintiffs of their rights under the FLSA.

56.    As a direct and proximate result of Defendants' willful disregard of the FLSA, Plaintiff and FLSA Collective Plaintiffs are entitled to liquidated (i.e., double) damages pursuant to the FLSA.

57.    Due to the intentional, willful and unlawful acts of Defendants, Plaintiff and FLSA Collective Plaintiffs suffered damages in an amount not presently ascertainable of unpaid overtime wages and an equal amount as liquidated damages.

58.    Plaintiff and FLSA Collective Plaintiffs are entitled to an award of their reasonable attorneys' fees and costs pursuant to 29 U.S.C. §216(b).

## COUNT II

### VIOLATION OF THE NEW YORK LABOR LAW
### ON BEHALF OF PLAINTIFFS AND CLASS MEMBERS

59.    Plaintiff realleges and reavers Paragraphs 1 through 58 of this Class and Collective Action Complaint as if fully set forth herein.

60.    At all relevant times, Plaintiff and Class members were employed by the Defendants within the meaning of the New York Labor Law §§2 and 651.

61.    Defendants willfully violated Plaintiff's and Class members' rights by failing to pay them wages, including overtime compensation at the statutory rate of time and one-

half, for all hours worked due to Defendants' policy of time shaving.

62.    Defendants knowingly and willfully operated their business with a policy of not providing proper wage statements as required under the New York Labor Law.

63.    Defendants knowingly and willfully failed to provide proper wage and hour notices to employees at the beginning of employment and annually thereafter pursuant to the requirements of the New York Labor Law.

64.    Defendants failed to properly notify employees of their hourly pay rate and overtime rate, in direct violation of the New York Labor Law.

65.    Defendants failed to provide a proper wage and hour notice, at the date of hiring and annually, to all non-exempt employees per requirements of the New York Labor Law.

66.    Defendants failed to provide proper wage statements with every payment as required by New York Lab. Law § 195(3).

67.    Due to the Defendants' New York Labor Law violations, Plaintiff and Class members are entitled to recover from Defendants their unpaid wages due to time-shaving, reasonable attorneys' fees, liquidated damages, statutory penalties and costs and disbursements of the action, pursuant to New York Labor Law.

## COUNT III

## VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964

68.    Plaintiff realleges and reavers Paragraphs 1 through 67 of this Complaint as if full set forth herein.

69.    Under Title VII, "[i]t shall be unlawful employment practice for an employer (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against

any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex . . .; or (2) to limit, segregate, or classify his employees . . . in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's . . . sex . . .." 42 U.S.C. § 2000e-2(a)(1) and (a)(2).

70.    Title VII provides for protection on the basis of sexual orientation under sex discrimination. *See Philpott v. State of New York, et al.*, Case No. 16 Civ. 6778, Dkt. No. 38, *2-5 (S.D.N.Y., May 3, 2017) citing *Christiansen v. Omnicom Grp., Inc.*, 852 F.3d 195 (2d Cir. 2017)("In *Christiansen*, Chief Judge Katzmann wrote a concurring opinion . . . Judge Katmann's majority concurrence persuaively outlines why sexual orientation discrimination is a form of sex discrimination and should therefore be congizable under Title VII . . . his central point was that 'sexual orientation discrimination is sex discrimination for the simple reason that such discrimination treats otherwise similarly-situated people differently solely because of their sex.' This is because 'sexual orientation cannot be defined or understood without reference to sex.'"). Alternatively, Title VII provides for protection on the basis of gender stereotypes under sex discrimination. *See Christiansen*, 852 F.3d. However, the *Philpott* Court declined to view sexual orientation different and separate from gender stereotyping. Case No. 16 Civ. 6778, Dkt. No. 38, *4-5 (S.D.N.Y., May 3, 2017)("The fact that plaintiff has framed his complaint in terms of sexual orientation discrimination and not gender stereotyping discrimination is immaterial. I decline to embrace an 'illogical' and artificial distinction between gender stereotyping discrimination and sexual orientation discrimination, and in so doing, I join several other courts throughout the country . . . and in light of evolving

state of the law on this question, I hold that plaintiff's sexual orientation discrimination claim is cognizable under Title VII.")(citations omitted).

71.     Under Title VII, "[i]t shall [also] be an unlawful employment practice for an employer to discriminate against any of his employees . . . becaue he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter." 42 U.S. Code § 2000e-3(a).

72.     Plaintiff is an employee and a qualified person within the meaning of Title VII and Defendants are employers under Title VII.

73.     Defendants violated Plaintiff's statutory protected rights under the law by discriminating against Plaintiff on the basis of sex, including sexual orientation and gender stereotyping and by terminating his employment in retaliation.

74.     Defendants operated a business that discriminated against Plaintiff in violation of Title VII by subjecting Plaintiff to a hostile work environment, in the form of failing to address the constant sexual harassment and threats made against Plaintiff for his sexual orientation, and by terminating Plaintiff's employment in retaliation for filing a complaint with the police.

75.     Defendants' conduct was intentional, malicious and in reckless disregard of Plaintiff's protected rights under Title VII.

76.     As a result of Defendants' discrimination against Plaintiff, Plaintiff sustained injury and suffered stress and economic damages.

77.     Due to Defendants' violation under Title VII of the Civil Rights Act of 1964, based on discrimination on the basis of sexual orientation, Plaintiff is entitled to recover from

Defendants: (1) economic damages, (2) compensatory and punitive damages, and (3) attorneys' fees and expert fees and costs.

## COUNT IV

## VIOLATION OF THE NEW YORK STATE HUMAN RIGHTS LAW

78.    Plaintiff realleges and reavers Paragraphs 1 through 77 of this Complaint as if fully set forth herein.

79.    The New York State Human Rights Law ("NYSHRL") prohibits discrimination in the terms, conditions, and privileges of employment, and the retaliation thereof, on the basis of an individual's sexual orientation.

80.    Plaintiff is an employee and a qualified person within the meaning of NYSHRL and Defendants are covered employers under the NYSHRL.

81.    Defendants operated a business that discriminated against Plaintiff in violation of the NYSHRL by subjecting Plaintiff to a hostile work environment, in the form of failing to address the constant sexual harassment and threats made against Plaintiff for his sexual orientation, and by terminating Plaintiff's employment in retaliation for filing a complaint with the police.

82.    Defendants' conduct was intentional, malicious and in reckless disregard of Plaintiff's protected rights under the New York Executive Law § 296.

83.    As a result of Defendants' unlawful discriminatory practices, Plaintiff sustained injury, including economic damages and past and future physical and emotional distress.

84.    Due to Defendants' violations under the New York State Human Rights Law, Plaintiff is entitled to recover from Defendants: (1) back pay and (2) compensatory damages.

## COUNT V

## VIOLATION OF THE NEW YORK CITY HUMAN RIGHTS LAW

85.     Plaintiff realleges and reavers Paragraphs 1 through 84 of this Complaint as if fully set forth herein.

86.     The New York City Human Rights Law ("NYCHRL") prohibits discrimination in the terms, conditions, and privileges of employment, and the retaliation thereof, on the basis of an individual's sexual orientation.

87.     Defendants has and has had at all relevant times herein, at least four (4) persons in their employ. Plaintiff is an employee and a qualified person within the meaning of NYCHRL and Defendants are covered employers under the NYCHRL.

88.     Defendants operated a business in New York City that discriminated against Plaintiff in violation of the NYCHRL by subjecting Plaintiff to a hostile work environment, in the form of failing to address the constant sexual harassment and threats made against Plaintiff for his sexual orientation, and by terminating Plaintiff's employment in retaliation for filing a complaint with the police.

89.     As a result of Defendants' unlawful employment practice, Plaintiff sustained injury, including econmic damages, the past and future physical and emotional distress and the costs of bringing this action.

90.     Due to Defendants' violations under the New York City Human Rights Law, as amended, based on discrimination on the basis of sexual orientation, Plaintiff is entitled to recover from Defendants: (1) back pay, (2) compensatory damages, (3) punitive damages, and (4) attorneys' fees and costs.

## COUNT VI

## DISCRIMINATION UNDER THE NEW YORK CITY ADMINISTRATIVE CODE (SUPERVISOR LIABILITY)

91.    Plaintiff realleges and reavers Paragraphs 1 through 90 of this Complaint as fully set forth herein.

92.    Under, New York City Administrative Code Title 8-107(13), an employer is liable for the discriminatory conduct by an employee, agent or independent contractor. The relevant code provides:

(a) An employer shall be liable for an unlawful discriminatory practice based upon the conduct of an employee or agent which is in violation of any provision of this section other than subdivisions one and two of this section.
(b) An employer shall be liable for an unlawful discriminatory practice based upon the conduct of an employee or agent which is in violation of subdivision one or two of this section only where:
(1) the employee or agent exercised managerial or supervisory responsibility; or
(2) the employer knew of the employee's or agent's discriminatory conduct, and acquiesced in such conduct or failed to take immediate and appropriate corrective action; an employer shall be deemed to have knowledge of an employee's or agent's discriminatory conduct where that conduct was known by another employee or agent who exercised managerial or supervisory responsibility; or
(3) the employer should have known of the employee's or agent's discriminatory conduct and failed to exercise reasonable diligence to prevent such discriminatory conduct.

93.    Defendants violated the section cited herein as set forth. Defendants' managers are supervisors in a managerial capacity. They discriminated against Plaintiff based on Plaintiff's sexual orientation and retaliated against Plaintiff for filing a complaint with the police.

94.    At all relevant times, Defendants operated a business that discriminated against Plaintiff on the basis of his sexual orientation.

95.    Defendants willfully violated the New York City Human Rights Law, as amended.

96.    Due to Defendants' violation of New York City Human Rights Law, as amended, on the basis of Defendants' discriminatory practices, Plaintiff is entitled to recover from Defendants: (1) back and front pay, (2) compensatory and punitive damages and (3) attorneys' fees and costs.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff on behalf of himself, respectfully request that this Court grant the following relief:

a.  A declaratory judgment that the practices complained of herein are unlawful under the FLSA, the New York Labor Law, Title VII, the New York State Human Rights Law, and the New York City Human Rights Law;

b.  An injunction against Defendants and their officers, agents, successors, employees, representatives and any and all persons acting in concert with them as provided by law, from engaging in each of the unlawful practices, policies and patterns set forth herein;

c.  An award of unpaid wages, including those at the overtime premium rate, due under the FLSA and the New York Labor Law due to Defendants' policy of time-shaving;

d.  An award of liquidated and/or punitive damages as a result of Defendants' willful failure to pay proper wages pursuant to 29 U.S.C. § 216;

e.  An award of liquidated and/or punitive damages as a result of Defendants' willful failure to pay  proper wages pursuant to the New York Labor Law;

f.  An award of back pay and compensatory damages due under Title VII;

g.  An award of back pay and compensatory damages due under the New York State Human Rights Law;

h.  An award of back pay and compensatory damages due under the New York City Human Rights Law;

i.  An award of punitive damages due under Title VII and the New York City Human Rights Law;

j.  An award of prejudgment and post judgment interest, costs and expenses of this action together with reasonable attorneys' and expert fees and statutory penalties;

k.  Designation of Plaintiff as Representative of the FLSA Collective Plaintiffs;

l.  Designation of this action as a class action pursuant to F.R.C.P. 23;

m.  Designation of Plaintiff as Representative of Class; and

n.  Such other and further relief as this Court deems just and proper.

## JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands trial by jury on all issues so triable as of right by jury.


Dated: New York, New York
        September 14, 2017

                              Respectfully submitted,

                              LEE LITIGATION GROUP, PLLC
                              C.K. Lee (CL 4086)
                              Anne Seelig (AS 3976)
                              30 East 39th Street, Second Floor
                              New York, NY 10016
                              Tel.: 212-465-1188
                              Fax: 212-465-1181
                              *Attorneys for Plaintiff, FLSA Collective Plaintiffs
                              and the Class*

                          By: */s/ C.K. Lee*
                              C.K. Lee (CL 4086)